EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| In re: <br><br><br> Amaury D. Padilla García | 2018 TSPR 71 <br><br> 200 DPR ____ |

Número del Caso: TS-14,664


Fecha: 27 de febrero de 2018

Abogado del promovido:

      por derecho propio


Oficina de Inspección de Notarías:

      Lcdo. Manuel Ávila De Jesús
      Director


Materia: Conducta Profesional – La suspensión será efectiva el 12 de abril de 2018, fecha en que se le notificó al abogado de su suspensión inmediata.


Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

Amaury D. Padilla García          TS-14,664

**PER CURIAM**

En San Juan, Puerto Rico, a 27 de febrero de 2018.

Hoy tenemos nuevamente la obligación de ejercer nuestra facultad disciplinaria contra un abogado por incumplir con las órdenes de este Tribunal. Por los fundamentos que enunciamos a continuación suspendemos inmediata e indefinidamente del ejercicio de la abogacía y la práctica de la notaría al Lcdo. Amaury D. Padilla García.

**I**

El Lcdo. Amaury D. Padilla García (licenciado Padilla García) fue admitido al ejercicio de la abogacía el 26 de enero de 2004 y prestó juramento

como notario el 3 de marzo de 2004. El 20 de enero de 2010 el Lcdo. José Ignacio Campos Pérez, Director Ejecutivo del Programa de Educación Jurídica Continua (PEJC), envió al licenciado Padilla García un *Aviso de Incumplimiento* en el que informó que tenía incumplidos los créditos requeridos por el *Reglamento del Programa de Educación Jurídica Continua,* según enmendado, 4 LPRA Ap. XVII-E, para el periodo del 1 de diciembre de 2007 al 30 de noviembre de 2009. En esa comunicación le otorgó un término de sesenta días para tomar los créditos necesarios y pagar la multa por cumplimiento tardío.

Tras incumplir con lo requerido, el Director del PEJC citó al licenciado a una vista informal ante un Oficial Examinador a celebrarse el 21 de junio de 2012. En la vista el abogado informó que se encontraba atravesando un proceso de divorcio y que su situación económica era precaria porque había dejado de ejercer en un bufete para trabajar por cuenta propia. Ante ello, suscribió una prórroga mediante la cual se comprometió a subsanar la deficiencia de créditos del periodo 2007-2009 y a pagar la multa por cumplimiento tardío dentro del término de treinta días.

En esa ocasión se le advirtió al abogado que fallar con su obligación conllevaría que se presentara su caso ante la Junta de Educación Continua y posteriormente ante esta Curia. Ello, con el propósito de informar los periodos

incumplidos. A pesar de ello, el licenciado Padilla García eludió nuevamente su obligación.

Así las cosas, el 8 de diciembre de 2016 el Director del PEJC presentó un *Informe sobre incumplimiento con [el] requisito de Educación Jurídica Continua* refiriendo el asunto a nuestra atención. En el informe detalló que el licenciado Padilla García no cumplió con los requisitos reglamentarios referentes a los períodos del 1 de diciembre de 2007 al 30 de noviembre de 2009.[1]

El 23 de enero de 2017 emitimos una *Resolución* mediante la cual concedimos al letrado un término de veinte días, contados a partir de la notificación, para que compareciera y mostrara causa por la cual no debía ser suspendido del ejercicio de la profesión. Esto, por incumplir con los requisitos del PEJC y por no comparecer cuando se le requirió. Puesto que tampoco compareció para contestar esa resolución, el 28 de marzo de 2017 emitimos una segunda resolución para concederle un término **final** de diez días, a partir de dicha notificación, para que compareciera y mostrara causa por la cual no debía ser suspendido del ejercicio de la profesión de la abogacía por

---

[1] Surge del mismo informe que el abogado tampoco ha cumplido con los requisitos reglamentarios referentes a los periodos del 1 de diciembre de 2009 al 30 de noviembre de 2011 y del 1 de diciembre de 2011 al 30 de noviembre de 2013, para los cuales se le notificó un *Aviso de Incumplimiento*. El letrado tampoco ha pagado la multa por cumplimiento tardío para esos periodos. Cabe destacar, que para estos periodos –al momento de emitirse el Informe- no se le había concedido una vista informal al abogado. Asimismo, el *Historial de cursos acreditados* del abogado refleja que para el periodo de 1 de diciembre de 2013 al 30 de noviembre de 2016 no tiene créditos acumulados.

incumplir con los requisitos del PEJC.[2] El término venció el 7 de abril de 2017.

El 10 de abril de 2017 el licenciado Padilla García presentó un escrito titulado *Moción en cumplimiento de orden y posición*. En síntesis, alegó los mismos planteamientos que expresó en la vista informal. Incluyó evidencia de haber cumplimentado 4.0 créditos y un pago por $50. Señaló que mediante dicho escrito daba por cumplido los requerimientos con el programa para con el periodo del 1 de diciembre de 2007 al 30 de noviembre de 2009.[3] Adujo que solo le faltaban cuatro créditos en notaría para estar en cumplimiento con ese periodo. Evaluada la moción, el 28 de abril de 2017 emitimos una resolución concediéndole sesenta días para presentar la certificación de cumplimiento emitida por el PEJC. El abogado no compareció.[4]

Así las cosas, mediante *Resolución* del 29 de diciembre de 2017, concedimos un término **final e improrrogable** de

---

[2] Esta resolución fue diligenciada por un alguacil de este Tribunal. La misma fue recibida por el licenciado Padilla García.

[3] Sin embargo, en la certificación del PEJC que el abogado presentó con fecha de 17 de abril de 2017, los periodos del 1 de diciembre de 2007 al 30 de noviembre de 2016 aparecen en incumplimiento.

[4] El 18 de diciembre de 2017 el Director del PEJC emitió una certificación que refleja un estatus de "incumplido" para los periodos siguientes: 1 de enero de 2007 al 31 de diciembre de 2008, 1 de enero de 2009 al 31 de diciembre de 2010, 1 de enero de 2011 al 31 de diciembre de 2012 y 1 de enero de 2013 al 31 de diciembre de 2014. En cuanto al periodo de 1 de enero de 2015 al 31 de diciembre de 2016 el estatus aparece como "periodo sin finalizar" ya que, cuando se emitió la certificación, no había culminado el año.

diez días para que cumpliera con lo ordenado en la resolución anterior. Esta resolución fue diligenciada por un alguacil de este Tribunal. La misma fue recibida por el licenciado Padilla García. Al momento el letrado no ha comparecido.

De otra parte, del expediente también surge que el 24 de enero de 2018 el Lcdo. Manuel E. Ávila De Jesús, Director de la Oficina de Inspección de Notarías (ODIN), presentó un *Informe especial sobre incumplimiento en la corrección de deficiencias notificadas y en solicitud de incautación preventiva de obra protocolar y otros remedios.* Informó que el licenciado Padilla García incumplió con el proceso de subsanación de su obra protocolar y que tiene una deficiencia arancelaria de **$1,772.** Señaló que, mediante comunicación del 23 de octubre de 2014, le notificó que comenzaría un proceso de reinspección de su obra protocolar ya que luego de varios trámites administrativos se aprobaron únicamente los tomos de protocolos del 2004 y los del 2011, pero quedaron pendientes los años 2005, 2006 y 2008 porque subsistían faltas que aún no habían sido atendidas. Sostuvo, además, que no se pudo aprobar el protocolo del 2007 ya que el licenciado Padilla García, a pesar de los múltiples requerimientos cursados, no lo entregó.

Adujo que el 17 de julio de 2017, tres años luego de la reinspección inicial programada, se citó al letrado –

mediante comunicación electrónica- a ODIN para completar el proceso de inspección de la obra que quedó pendiente de aprobación y hacer entrega de la obra que no pudo ser examinada, pero éste no compareció. Surge del informe que el licenciado Padilla García alegó que se encontraba recluido en la cárcel por desacato civil en un proceso de relaciones de familia. Sin embargo, no presentó evidencia que acreditara tal alegación.

El Director de ODIN también señaló que el 12 de diciembre de 2017 la Lcda. Mari-Linn Bon Corujo, Inspectora de Protocolos y Notarias, presentó un *Informe sobre deficiencias en la notaría del Lcdo. Amauri David Padilla García*. Luego de recibir el informe, al día siguiente le envió al letrado un documento titulado *Informe sobre estado de la obra notarial del Lcdo. Amaury David Padilla García, Notario Número 14,664* a las direcciones de correo postal y electrónica que constan en el Registro Único de Abogados y Abogadas y notificó las deficiencias señaladas. Le concedió un término de quince días para que subsanara y entregara la obra protocolaria que faltó examinar, así como su Registro de Testimonios. También le apercibió que el incumplimiento conllevaría que el asunto se llevara ante la atención de este Tribunal para la acción disciplinaria correspondiente. El término venció el 2 de enero de 2018 sin que el notario notificara el estatus sobre el proceso de subsanación de su obra protocolar y sin que haya entablado comunicación con

la ODIN. Ante ello, el 2 de febrero de 2018 ordenamos la incautación preventiva de la obra protocolar y el sello notarial del letrado. Cabe destacar que al día de hoy no hemos recibido escrito alguno de su parte acreditando el cumplimiento con lo ordenado.

## II

En innumerables ocasiones hemos expresado que el ejercicio de la profesión jurídica requiere que todo abogado y abogada observe rigurosamente los requerimientos de este Tribunal.[5] Este mandato ético se encuentra establecido, particularmente, en el Canon 9 del Código de Ética Profesional, 4 LPRA Ap. IX. Específicamente, este precepto ético obliga al abogado observar para con los tribunales una conducta que se caracterice por el mayor respeto.[6] Ello requiere que el abogado o abogada cumpla de forma oportuna y diligente con las órdenes y requerimientos emitidos por los foros judiciales, particularmente cuando surgen de un procedimiento disciplinario.[7] Esta obligación se extiende a todos aquellos requerimientos que emitan la Oficina del Procurador General, la Oficina de Inspección de Notarias y el Programa de Educación Jurídica Continua.[8]

---

[5] *In re Lee Navas,* 2017 TSPR 208, 198 DPR __ (2017).

[6] *In re Lee Navas*, *supra; In re Abreu Figueroa,* 2017 TSPR 126, 198 DPR __ (2017); *In re Mangual Acevedo*, 197 DPR 998 (2017); *In re Marín Serrano*, 197 DPR 535 (2017).

[7] *Íd.*

[8] *In re Abreu Figueroa, supra; In re Montañez Melecio*, 197 DPR 275 (2017).

En ese sentido, los abogados y las abogadas tienen un deber ineludible de respetar, acatar y responder diligentemente nuestras órdenes y los requerimientos de los entes mencionados.[9] Desatenderlas constituye una afrenta a la autoridad de los tribunales e infringe el precitado Canon 9 del Código de Ética Profesional, *supra*.[10] Por consiguiente, el incumplimiento con los requerimientos del Tribunal constituye un serio agravio a la autoridad de los Tribunales y es suficiente para decretar su separación indefinida de la profesión.[11] Según hemos sostenido en innumerables ocasiones y esta ocasión no será la excepción: "este Tribunal no ha de tomar livianamente el que un abogado asuma una actitud de indiferencia y menosprecio hacia nuestra autoridad".[12]

De igual forma las exigencias que emanan de nuestro poder de reglamentación de la profesión legal obligan a los abogados y abogadas a cumplir con la educación jurídica continua para que ejerzan sus funciones de manera ética y con competencia y calidad. Además, ello incide en el deber que tiene todo abogado y abogada de mantener un alto grado

---

[9] *In re Abreu Figueroa*, *supra*; *In re Santaliz Martell*, 194 DPR 911, 914 (2016).

[10] *In re Dávila Toro*, 193 DPR 159, 163 (2015); *In re Pacheco Pacheco,* 192 DPR 553, 560 (2015); *In re García Incera*, 177 DPR 329, 331 (2009).

[11] *In re Abreu Figueroa, supra*; *In re Abadía Muñoz et al.*, 197 DPR 1044 (2017); *In re Pastrana Silva*, 195 DPR 366, 369 (2016); *In re Irizarry Irizarry*, 190 DPR 368 (2014).

[12] *In re Soto Rivera*, 2017 TSPR 115, 197 DPR __ (2017); *In re Santaliz Martell*, *supra*, pág. 914; *In re Dávila Toro*, 193 DPR 159, 164 (2015).

de excelencia y competencia, según establecido en el Canon 2 del Código de Ética Profesional, 4 LPRA Ap. IX. A tales efectos, este precepto ético dispone que con el "fin de viabilizar el objetivo de representación legal adecuada para toda persona, el abogado [...] debe realizar esfuerzos para lograr y mantener un alto grado de excelencia y competencia en su profesión a través del estudio y la participación en programas educativos de mejoramiento profesional".

Por otro lado, en forma reiterada hemos expresado que "[l]a desidia y dejadez ante los requerimientos del PEJC, no solo representan un gasto de recursos administrativos por parte de ese programa, sino que, además, reflejan una patente falta de compromiso con el deber de excelencia y competencia que encarna el Canon 2 del Código de Ética Profesional".[13] Como consecuencia, nos hemos visto obligados a suspender indefinidamente a abogados que desatienden los requerimientos del PEJC e incumplen con las horas crédito de educación continua requerida.[14]

Con relación a la notaría, hemos enfatizado que el notario no puede asumir una actitud pasiva ante los señalamientos realizados por la ODIN en cuanto a las

---

[13] *In re Cabán Arocho*, 2017 TSPR 104, 198 DPR __ (2017); *In re López Santos,* 194 DPR 960 (2016).

[14] *In re Cabán Arocho, supra; In re Rodríguez Gerena,* 197 DPR 1093 (2017); *In re Ortiz Soto,* 196 DPR 1044 (2017); *In re Arroyo Acosta,* 192 DPR 848, 852 (2015).

deficiencias de la obra notarial.[15] Tampoco esperar que sea este Tribunal quien les notifique las deficiencias señaladas en la obra notarial que no han sido corregidas. Por el contrario, una vez ODIN identifica y señala alguna falta en la obra protocolar del notario, son éstos quienes tienen la obligación de poner su obra al día y de subsanar cualquier deficiencia en ella.[16]

Los requerimientos que hace ODIN son análogos a las órdenes que hace este Tribunal, por lo que ameritan la misma diligencia.[17] Esto es así porque el ejercicio de la notaría requiere el mayor celo en el cumplimiento de los deberes que imponen la Ley Notarial y su Reglamento, así como los deberes éticos.[18] En consecuencia, el incumplimiento con un requerimiento de la ODIN podría producir el mismo efecto que la desobediencia con una orden emitida por este Tribunal, entiéndase la suspensión indefinida e inmediata de la abogacía y la notaría.[19]

Los notarios tienen la obligación de adherirse estrictamente al cumplimiento de todos aquellos deberes y las obligaciones que le impone su función notarial. Trastocar dichos deberes lesiona la confianza pública que

---

[15] *In re Cruz Liciaga*, 2017 TSPR 160, 198 DPR __ (2017); *In re Abendano Ezquerro*, 2017 TSPR 140, 198 DPR __ (2017).

[16] *Íd.*

[17] *In re Pratts Barbarossa*, 2018 TSPR 5, 198 DPR __ (2018); *In re Núñez Vázquez,* 197 DPR 506 (2017); *In re Franco Rivera,* 197 DPR 628 (2017); *In re Vázquez González,* 194 DPR 688, 695 (2016).

[18] *In re Abendano Ezquerro, supra.*

[19] *In re Pratts Barbarossa, supra; In re Núñez Vázquez, supra; In re Franco Rivera, supra; In re Vázquez González, supra.*

ha sido depositada en ellos. Entre estos deberes está el cancelar sellos arancelarios al momento de otorgar un documento público. No hacerlo perjudica a los otorgantes o terceros, defrauda al erario y podría constituir un delito de apropiación ilegal.[20]

### III

Nótese que, desde que se notificó al licenciado Padilla García el *Aviso sobre incumplimient*o suscrito por el Director del PEJC por eludir su obligación en cuanto a los términos reglamentarios del programa, éste le concedió varias oportunidades. Sin embargo, luego de la vista informal, a pesar de que se comprometió a subsanar la deficiencia de créditos que le faltaba en ese momento en el término concedido no lo hizo. Lo mismo ocurrió con los emplazamientos cursados por ODIN. A pesar de los múltiples requerimientos, no compareció cuando se le requirió, no entregó la obra solicitada y tampoco justificó su incumplimiento. Ello, sumado al hecho de que su obra notarial contiene serias deficiencias notariales, particularmente, una deuda arancelaria de **$1,772** que no ha sido subsanada.

En cuanto a las órdenes que en varias instancias emitimos, hizo caso omiso; aun cuando ya había sido apercibido expresamente que las consecuencias de su

---

[20] *In re Abendano Ezquerro*, *supra*; *In re Capestany Rodríguez*, 148 DPR 728, 734-735 (1999); *In re Troche Mercado*, 194 DPR 747, 752 (2016).

incumplimiento conllevarían la suspensión del ejercicio de la profesión. Ciertamente, la actitud de dejadez y desidia demostrada por el licenciado Padilla García ante los distintos foros, constituyó un claro menosprecio a nuestra autoridad y prueba incontrovertible de que éste no interesa continuar siendo miembro de la profesión.

## IV

En vista de lo anterior, suspendemos inmediata e indefinidamente al licenciado Padilla García de la profesión de la abogacía y el ejercicio de la notaría. Como consecuencia, su fianza notarial queda automáticamente cancelada. Además, le concedemos por última vez un término de treinta días para completar a sus expensas el proceso de subsanación de la obra protocolar y pagar la deuda arancelaria de **$1,772**, so pena de referir el asunto al Tribunal de Primera Instancia a un proceso de desacato.

El señor Padilla García deberá notificar a todos sus clientes de su inhabilidad de seguir representándolos, devolverles cualesquiera honorarios recibidos por trabajos no realizados, devolverles los expedientes de casos pendientes e informar inmediatamente de su suspensión a los foros judiciales y administrativos en los que tenga algún caso pendiente. Además, tiene la obligación de acreditar y certificar a este Tribunal el cumplimiento con todo lo anterior, en un término de treinta días contados a partir de la notificación de esta Opinión *per curiam* y Sentencia.

No hacerlo pudiera conllevar a que no se le reinstale cuando lo solicite.

Notifíquese inmediatamente al señor Padilla García mediante correo electrónico y vía correo certificado con acuse de recibo a su última dirección conocida.

Se dictará Sentencia de conformidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

Amaury D. Padilla García

TS-14,664

**SENTENCIA**

En San Juan, Puerto Rico, a 27 de febrero de 2018.

Por los fundamentos expuestos en la Opinión *per curiam* que antecede, los cuales se hacen formar parte de la presente Sentencia, suspendemos indefinidamente de la práctica de la abogacía y el ejercicio de la notaría al Lcdo. Amaury D. Padilla García. Como consecuencia, su fianza notarial queda automáticamente cancelada.

Le ordenamos al señor Padilla García a completar a sus expensas el proceso de subsanación de la obra protocolar y a pagar la deuda arancelaria de **$1,772** en un término de treinta días, so pena de referir el asunto al Tribunal de Primera Instancia a un proceso de desacato.

También tiene la obligación de notificar a todos sus clientes de su inhabilidad de seguir representándolos, devolverles cualesquiera honorarios recibidos por trabajos no realizados, devolverles los expedientes de casos pendientes e informar inmediatamente de su suspensión a los foros judiciales y administrativos en los que tenga algún caso pendiente. Además, acreditar y certificar a este Tribunal el cumplimiento con todo lo anterior, en un término de treinta días contados a partir de la notificación de esta Opinión *per curiam* y Sentencia. No hacerlo pudiera conllevar que no se le reinstale cuando lo solicite.

Notifíquese inmediatamente al señor Padilla García mediante correo electrónico y vía correo certificado con acuse de recibo a su última dirección conocida.

Lo acordó y manda el Tribunal y certifica el Secretario del Tribunal Supremo. La Jueza Presidenta, Oronoz Rodríguez y el Juez Asociado señor Estrella Martínez concurren sin opinión escrita.


                                   Juan Ernesto Dávila Rivera
                                   Secretario del Tribunal Supremo